# Williams *versus* Neff.

# Neff's Appeal.

1. A clause in a will was: "The rest, (that is all) residue, and remainder of my estate, real, personal and mixed, whatsoever, I give, devise and bequeath to my sons William P. Neff, Charles Neff, James P. W. Neff, John R. Neff, Jr., and any child or children that may hereafter be born, in equal shares, as tenants in common." *Held*, that on the death of one of the sons before the testator, his share went to the testator's heirs and next of kin.

2. There was no survivorship, for it is not given to the sons as a *class*, but to each by his own name; "sons" simply identifies the individual persons meant.

3. The testator having republished his will after the death of a residuary devisee, he nevertheless died intestate as to his share.

Both these cases depended upon the construction of the will of John R. Neff, and were considered and decided together.

The first case was certified from Nisi Prius, and was an action of ejectment, commenced March 8th 1865, by Mary Jane Wil-

liams against William P. Neff, Charles Neff and John R. Neff, Jr., for the one-sixteenth part of a messuage, &c., in Philadelphia, in which a case was stated.

John R. Neff died in July 1863, seised of the messuage, &c., leaving three sons, the defendants, and his granddaughter, the plaintiff. By his will, dated April 22d 1850, after directing payment of his debts, &c., he provided: "I give, &c., to my executors * * in trust, ten thousand dollars (six per cent. interest per annum on said amount to be paid from the time of my death), * * to and for the sole and separate use and behoof of my granddaughter, Mary Williams, the same to be paid to her on her arrival at the age of twenty-one years; should she marry before she arrives at that age, to be paid to her at the time of her marriage; and to collect the interest thereon and pay over the same from time to time unto my said granddaughter, Mary Williams; and in case of her death before she marries or arrives at the age of twenty-one years, then to divide the same, share and share alike, between my sons, William P., Charles, James P. W. and John R. Neff, Jr., and any child or children that may be hereafter born."

He then gave to his sisters, Hannah Patterson and Rebecca Biggs, each a yearly annuity of $300; and, if Mrs. Biggs's husband survived her, her annuity to be paid to him during his life.

He then provided: "The rest (that is, all), residue and remainder of my estate, real, personal and mixed, whatsoever, I give, devise and bequeath to my sons, William P. Neff, Charles Neff, James P. W. Neff, John R. Neff, Jr., and any child or children that may be hereafter born, in equal shares as tenants in common."

By a codicil of October 10th 1857, he revoked the legacies to his sisters and the husband.

James P. W. Neff was alive at the date of the will, but died unmarried and without issue before the date of the codicil.

The question was, whether James's share went to his brothers, the other residuary devisees, or to the heirs at law of the testator.

The following opinion was delivered at Nisi Prius by Mr. Justice Thompson:—

"The question is, to whom does the share devised to James P. W. Neff go, he having died before the testator, unmarried and without issue? To the heir at law the plaintiff, or to the residuary devisees?

"It is a case of lapsed and not void devise. This may possibly make a distinction, but as it is not my intention to elaborate an opinion, I will not discuss this distinction.

"In exploring the intent of the testator, we must regard it as

[Williams *v.* Neff.]

of the time of the disposition of his property made in his will, that is, of the time of making his will.

"It is clear in this case that the testator intended not to die intestate of any portion of his estate; his residuary clause imports that.

"But did he make provision for a contingency out of which intestacy of a portion might grow? It does not seem that he thought of that. He makes specific devises and then a residuary devise of the remainder of his estate in equal portions to his four sons. One dies before him and the provision is not changed.

"Now, reading the will as of the day of its date, no intention is indicated to make any portion of his estate devised a residue. There is no intention to do so deducible from the will.

"Do the words used require such a construction? A legacy might on authority fall into a residue; but the English rule is that a *devise* lapses in favour of the heir at law: Ram on Wills 262, citing many authorities.

"In Craighead *v.* Given, 10 S. & R. 351, Duncan, J., said: 'The most explicit declaration (by a testator) that the devise shall not lapse, is not sufficient to prevent it; there must be either survivorship, as in a joint devise, or limitation over.' In that case the heir at law recovered in preference to the residuary devisees. See also the same doctrine, 1 Ash. 242; 3 Harris & McHenry 333; same of a void devise, Sloan *v.* Hanse, 2 Rawle 28.

"There was no limitation over or devise in this case. The testator had no thought of the kind when he closed his will.

"I should have little difficulty in coming to a conclusion favourable to the plaintiff, if it were not for the case of Patterson *v.* Swallow, 8 Wright 487. I am not quite clear that it was intended in that case to decide, as has been argued, that lapsed legacies and devises fall into the residuary estate as a general rule.

"The clauses there called devises were in fact no devises. It is obvious that no testamentary disposition was exercised in regard to them. Item, 'I give and devise unto ——— heirs and assigns,' was no exercise of a testamentary intent, and the residuary clause gave to the residuary devisees '*all which does not pass by virtue of my will and this codicil.*' As if it had been said, if for any cause, any of my specific devises shall fail to pass to the devisees, they shall go over to my residuary devisees. This looked to the possibility of a failure in some contingency or other and a provision against it. Here is an intent to give direction. That we have not in the case in hand, and in this there certainly is an apparent difference at least, and I think real.

"I agree with the *doctrine* of the case fully in its application to the case itself, and with the general doctrine that, intestacy will not be presumed if the words of the testator be broad enough

[Williams *v.* Neff.]

to prevent it; and that the heir will not be entitled to take either a void or lapsed devise if the residuary *clause be comprehensive enough to embrace it.* To say this is simply to say that the intention of the testator shall govern, a thing nobody disputes. But whether the words be comprehensive enough must always be the question. I don't think they are here.

" When a testator says that a devisee shall have one-third of his estate, there is no presumption that he is to have more. If he say he shall have one-third of his estate after legacies and debts are paid, this is a residuary devise, and if he say nothing more, it must be supposed he gives this, less the devises to others. This must be the extent of the devisee's interest unless some other provision gives him more; hence my learned brother used the qualification that he might take more if the residuary clause was comprehensive enough to give more, but he did not mean that every residuary clause would give more than the *residuum* in contemplation of the testator when he wrote his will.

" I hesitate somewhat notwithstanding, in view of the case just referred to, to pronounce what I would do without hesitancy if it did not exist, to wit, that the heir at law in this case is entitled to recover. But I will do so, and will be corrected if I have mistaken the force or effect of that case.

" September 9th 1865, it is ordered that judgment be entered in favour of the plaintiff, for the one undivided sixteenth part of the messuage and lot of ground for which this suit was brought, &c."

This was assigned for error.

The other case was an appeal by William P. Neff, Charles Neff and John R. Neff, Jr., executors, &c., of John R. Neff, deceased, from the decree of the Orphans' Court of Philadelphia, on their account.

The account having been referred to an auditor,—George Junkin, Esq.,—he found that there was a balance of $150,260.57 in the executor's hands for distribution.

Under the will of the testator and the facts as stated in the foregoing case, the same questions were raised as to the distribution as in that case.

The auditor reported that Mary Jane Williams was entitled to one-sixteenth of the balance, being of opinion that as to James's share of the residue the testator died intestate.

Exceptions were filed to the report, overruled by the Orphans' Court, and the report confirmed. From this the sons appealed.

*W. A. Porter,* for plaintiff in error and appellants.—The testator intended that his granddaughter should on no contingency get more than the $10,000. He provides for this legacy going over on her death before twenty-one.

[Williams *v.* Neff.]

A lapse takes place where the devisee or legatee dies after the will has been made, and before the death of the testator, provided the devise or bequest is not to a class: Bagwell *v.* Dry, 1 P. Wms. 700; Owen *v.* Owen, 1 Atk. 494; Ackroyd *v.* Smithson, 1 Br. C. C. 503; Sword *v.* Adams, 3 Yeates 34; Weishaupt *v.* Brehman, 5 Binn. 115; Dickinson *v.* Purvis, 8 S. & R. 71; Newbold *v.* Prichett, 2 Wh. 46; Comfort *v.* Mather, 2 W. & S. 450; Act of 8th April 1833, § 12 (Purd. 1017); Act of 6th May 1844, § 2.

Where the lapse is of a specific legacy, it falls into the residue and the residuary legatee takes it: Roberts *v.* Cooke, 16 Vesey 451; Humberstone *v.* Stanton, 1 Vesey & Beames 388; Brown *v.* Higgs, 4 Ves. 708; Shanley *v.* Baker, 4 Id. 732; 6 Bacon's Abridg. 243; Dawson *v.* Clark, 15 Ves. 417; Leake *v.* Robinson, 2 Merivale Ch. Rep. 392; Taylor *v.* Lucas, 4 Hawks' Rep. 215; Powell *v.* Slocomb, 2 Taylor's Rep. 315; Davis *v.* King, 2 Iredell's Ch. R. 203; Breithaupt *v.* Bauskett, 1 Richardson's Eq. R. 465; Vick *v.* McDaniell, 3 How. (Miss.) R. 337; Chamberlin *v.* Terry, 1 S. & M. Ch. R. 589; Banks *v.* Phelam, 4 Barb. S. C. R. 80; Goddard *v.* Wagner, 2 Strobhart's Eq. R. 1; Johnson *v.* Johnson, 3 Ired. Ch. R. 427; Woolmer's Estate, 3 Whart. 477; Patterson *v.* Swallow, 8 Wright 487.

It is argued that this principle applies only to the lapse of a specific devise or bequest.

It must be admitted that Bagwell *v.* Dry, 1 P. Wms. 700, and Man *v.* Man, 2 Strange 905, seem to show that this was the English law on the subject when those cases were decided, but it is not so clear that they would be regarded as sound in England, since the passage of the statute of 1 Vict. ch. 26, § 25.

Craighead *v.* Given, 10 S. & R. 351, inclines in the same direction, provided it can be said that there was really a residuary clause in the will which was contested in that case.

The other cases referred to by the auditor do not sustain his conclusion. In Commonwealth *v.* Nase, 1 Ashmead 242, there was no residuary clause at all. In Coates Street, 2 Id. 24, there was a limitation over to the surviving children in the event of the death of one of them. In Duffield *v.* Morris, 8 W. & S. 348, there was no lapse. The testator directed his estate to be divided into twenty-two shares, but distributed only twenty of the shares, leaving two of them undisposed of. In Sloan *v.* Hanse, 2 Rawle 28, there was no residuary clause, such as that which was made the ground of the decision in Patterson *v.* Swallow, 8 Wright 487. Woolmer's Estate, 3 Whart. 477, is a decision in our favour, for there the residuary legatee and not the next of kin took the legacy.

Where the devise or bequest embraces a fluctuating class of persons, who are to be ascertained at the death of the testator, or

[Williams v. Neff.]

at a subsequent period, the decease of any of such persons during the testator's life will occasion no lapse, *even though the devisees or legatees are made tenants in common*, since members of the class antecedently dying are not actual objects of gift: 1 Jarm. on Wills 295 ; 1 Roper on Legacies 487 ; Cook v. Winder, 8 Jur. 770 ; Castle v. Eate, 7 Beav. 296 ; Shettleworth v. Greaves, 4 Mylne & Craig 35 ; Powell on Devises 327 ; 2 Jarm. on Wills 108 ; Stebbing v. Walkey, 2 Bro. Ch. 86 ; Garvey v. Hibbert, 19 Ves. Jr. 124 ; Scott v. Fenhoulhett, 1 Cox 79 ; Garth v. Meyrick, 1 Bro. C. C. 30, 31 (Perk's ed.) ; Berkeley v. Pulling, 1 Russell's Rep. 496 ; Harrison v. Harrison, 1 Russell & Mylne's Ch. R. 72 ; Humphreys v. Humphreys, 2 Cox 184 ; Urie's Exec. v. Irvine and Wife, 9 Harris 310 ; Vernor v. Henry, 6 Watts 192.

Why may not the residue of Mr. Neff's estate be regarded as given in his will to a class, that is, to his sons ? Doe v. Sheffield, 13 East 526 ; Jackson v. Merrill, 6 Johns 185 ; Anderson v. Parsons, 4 Greenleaf 486 ; Knight v. Gould, 2 My. & K. 295 ; Stehman v. Stehman, 1 Watts 475 ; Bayard v. Atkins, 10 Barr 18.

*J. B. Gest*, for defendant in error and appellee.—There is a distinction between lapsed particular devises or bequests and residuary devises or bequests. There can be no residue of a residue.

A lapsed or void specific or general devise goes to the heir at law, and not to the residuary devisee : Sword's Lessee v. Adams, 3 Yeates 34 ; Green v. Dennis, 6 Conn. 292 ; Lingan v. Carroll, 3 Harris & McHenry 333 ; Wright v. Hall, Fortescue 82 ; Roe v. Flood, Ib. 184 ; Watson v. Earl of Lincoln, Amb. 328 ; Att. Gen. v. Johnston, Ib. 580 ; Gravenor v. Hallan, Ib. 643 ; Vankleck v. Reformed Dutch Church, 6 Paige 600 ; 20 Wend. 457 ; Collins v. Wakeman, 2 Ves. Jr. 683 ; Doe v. Underwood, Willes 293 ; Van Cortlandt v. Kip, 1 Hill 590.

The only authorities found at all in opposition to these are Ferguson v. Hedges, 1 Harrington 524, in which a void specific devise to a church was given to the residuary devisee. The court, Clayton, C. J., saying if the devise were lapsed, it would go to the heir: Hayden v. Stoughton, 5 Pick. 538 ; Brigham v. Shattuck, 10 Ib. 306 : in which it was held that land devised on condition subsequently forfeited by non-compliance went to the residuary devisee : Patterson v. Swallow, 8 Wright 487.

If a testator devise the residue of his lands to A., B. and C. as tenants in common in fee, and A. dies, and then the testator makes a codicil to his will, by which the will is republished, he would die intestate as to one-third, since the subsisting devise which originally embraced two-thirds only, could never by the mere effect of the republication be expanded into a gift of the entirety : 1 Jarm. on Wills 185, 6 Bac. Ab. 304 ; Peat v. Chap-

man, 1 Ves. Sen. 542.   Bequest of residue to be divided between two, held that it was a tenancy in common, and by the death of one in testator's lifetime his share went to next of kin as undisposed of: Phillips *v.* Phillips, 1 Myl. & Keene 649; Ackroyd *v.* Smithson, 1 Bro. C. C. 503; Owen *v.* Owen, 1 Atkyns 494; Skrymsher *v.* Northcote, 1 Swanst. 566; Coates Street, 2 Ashmead 25; Sloan *v.* Hause, 2 Rawle 28; Duffield *v.* Morris, 8 W. & S. 348; Bagwell *v.* Dry, 1 P. Wms. 700; Man *v.* Man, 2 Strange 905; Page *v.* Page, 2 P. Wms. 488; Craighead *v.* Given, 10 S. & R. 351; Commonwealth *v.* Nase, 1 Ash. 242; Sibley *v.* Cook, 3 Atk. 572; Comfort *v.* Mather, 2 W. & S. 451.

The opinion of the court was delivered, June 25th 1866, by

READ, J.—The former of these cases has reference to the real estate of the testator, John R. Neff, and the latter to the distribution of his personal property, and as both were argued together, they will be considered together in this opinion.

The general rule at common law was that lapsed devises of real estate went to the heirs at law, whilst lapsed legacies of personal estate went to the residuary legatee.   In the present cases this distinction becomes immaterial, for the question relates to a part of a residuary devise and legacy failing or lapsing by the death of the residuary devisee and legatee before the testator.

On the 22d April 1850, the testator made his will, in which he gave to his granddaughter, Mary Williams, $10,000.   This amount was given to his executors in trust to pay the interest to her for her sole and separate use, the principal to be paid to her on her arrival at the age of twenty-one years.   Should she marry before she arrives at that age, to be paid to her at the time of her marriage ; and in case of her death before she marries or arrives at the age of twenty-one years, then to divide the same, share and share alike, between my sons, William P., Charles, James P. W. and John R. Neff, and any child or children that may be hereafter born.

He then gave certain annuities to two of his sisters, and charged the same and the legacy to his granddaughter on certain of his real estate.   Then follows the residuary clause in these words: " Item: The rest (that is all), residue and remainder of my estate, real, personal and mixed, whatsoever, I give, devise and bequeath to my sons, William P. Neff, Charles Neff, James P. W. Neff, John R. Neff, and any child or children that may be hereafter born, *in equal shares* as *tenants in common*."

He then appointed his sons, naming them, and his confidential friend, Alexander Boyd of Philadelphia, his executors.

On the 30th July 1851, by a codicil, he said : " My intention is, that all my executors above named act without reference to any law or laws of the states where my property lies, without giving security ;" and on the 10th of October 1857, by another codicil,

[Williams *v.* Neff.]

he said, " for reasons growing out of recent occurrences, I hereby revoke all the provisions of the foregoing will, so far as they relate to my sisters Hannah Patterson and Rebecca Biggs, and the husband of the latter."

This codicil republished his will as of that date (Neff's Appeal, 12 Wright 501), one of the residuary devisees and legatees. James P. W. Neff died before the testator on the 24th September 1855, the testator dying on the 24th July 1863. His daughter Jane Bird Williams died before the date of her father's will, on the 28th March 1850; and his three sons and his granddaughter, who survived him, were his only heirs and next of kin.

The introduction of the provision as to after-born children is made necessary by the 15th section of the Wills Act of 8th April 1833, by which, if such children were born after the date of the will, the testator would die intestate as to such children, and all its provisions would be rendered nugatory, so far as regarded the purparts of such children.

There having been no such after-born children, the will is to be construed as if no such provision had been necessary, and the clear words of the clause give to each son one-fourth part or share as a tenant in common. There is no survivorship, for it is not given to his sons as a class, but to them and each by *his own name ;* as the term *sons* simply identifies the individual persons meant: Hawkins on Wills 113; 1 Jarman 187. When, therefore, one son dies before his father his one-fourth must lapse, because there is no further provision in the will; and if so, that share or purpart vests in the heirs and next of kin of the testator, who dies as to this one-fourth part or share intestate.

But it is supposed that our Wills Act has made some alteration in the common law in this particular. It is proper, therefore, to examine into the circumstances under which this act was framed and passed, and its proper construction.

The revisors of our acts were appointed by Governor Wolf under a resolution of the legislature of the 23d March 1830, and their first report was read in the Senate on the 2d February 1831. Their second report was dated 1st March 1832, and was read in the Senate on the 7th of the same month, and included the Wills Act with the revisors' remarks drawn by Judge Joel Jones. This draft was substantially adopted by the legislature, and forms the Act of 8th April 1833, with some slight verbal alterations.

The revisors speaking of the 9th section say: " The 9th section coincides with the improvement made in this respect by many of our sister states; and has been introduced from a belief that the intention of a testator has often been defeated by the omission of words of inheritance in a devise of real estate." The 10th section, which provides for after-acquired real estate, is thus spoken of: " In the 10th section we have proposed an alteration

equally material with that just adverted to, and which like that has the recommendation of having been adopted into the revised codes of some of our sister states. Whatever may be the origin of the judicial doctrine on this subject, whether it has arisen from a literal construction of the statute of Henry 8th or from an analogy with the law of conveyance by deed, it is believed that the result has been unfortunate for the general intent of testators. It is supposed to be the common impression that all of which a man may die possessed will pass by general expressions of gift or devise, and cases of great hardship are known to have arisen from this misconception of the law in respect to real estate. To accommodate the rule to the progress of public opinion, is the object of this section, which it is hardly necessary to remark, will not prevent testators from making any other disposition that they please of their after-acquired property."

The 11th and 12th sections, relating to the widow's right of election, and lapsed legacies, are copied from the 10th section of the Act of 4th April 1797, and the Act of 10th March 1810. The various alterations made by subsequent legislation are to be found in Brightly's Purdon, 9th ed., p. 1016 to 1018.

The alteration therefore, by the Wills Act, was to allow real estate acquired by a testator after making his will, to pass by a general devise, which has no bearing on the question before us, as all the real estate which was the subject of the devise was acquired before the date of his will, and no alteration is made as to the operation of a will of personal estate.

Chancellor Kent's first edition of his fourth volume of his Commentaries was published in 1830, and the whole subject of wills in England and America is discussed in the 47th Lecture from pages 497 to 527, giving a general view of the alterations made or proposed to be made in this country. This book was in the hands of the revisors, and no doubt formed the principal source of their information of the codes or laws of the different states, and particularly of New York, which had just codified their system in relation to wills.

The New York Act (2 Rev. Statutes 57), chapter 6, title 1, article 1, § 5, enacted that " every will that shall be made by a testator in express terms of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death:" see Lynes *v.* Townsend, 6 Tiffany (33 N. Y.) 558, September 1865. The 52d section of 3d Article, Id. p. 66, provided against devises or legacies to a child or descendant of the testator dying in his lifetime, lapsing if he died leaving a child or other descendants surviving the testator, and the word heirs is not necessary in a grant or devise to create or convey an estate in fee : 1 Rev. Stat. 740, § 1 ; 4 Kent's Com. 522.

[Williams v. Neff.]

In Virginia an act was passed in 1785, giving a testator the power to devise real estate which at the time of his death he shall have, and in Smith v. Edrington, 8 Cranch 66, it was held it was necessary that the intention to pass lands acquired after the date of the will should clearly appear upon the face of the will.

By the 3d section of chapter 62 of the Revised Statutes of Massachusetts 1836, p. 417, which, with one verbal alteration, is section 4 of chapter 92 of the Revised Statutes 1860, p. 476, it is enacted: " Any estate, right or interest in lands acquired by the testator after making his will shall pass thereby in like manner, as if possessed at the time of making the will, if such (shall) clearly and manifestly appear by the will to have been the intention of the testator." The next section provides that every devise of land in wills made after the statute shall be construed to convey all the estate of the devisor which he could lawfully devise.

The 3d section has been the subject of judicial construction, and in the cases of Cushing v. Aylwin, 12 Metc. 169, Pray v. Waterston, Id. 262, Brimmer v. Sohier, 1 Cush. 118, and Winchester v. Forster, 3 Id. 366, it has been held to extend to and operate upon a will executed and published before the statute took effect. By the same act, provision is made to prevent lapse, if the devisee leaves issue who survive the testator. On the 22d February 1850, the legislature of Maryland passed an act " That every last will and testament executed in due form after the 1st day of June next, shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed on the day of the death of the testator or testatrix, unless a contrary intent shall appear by the will." This act has been the subject of judicial construction in Carroll v. Lessee of Carroll, 16 Howard 275, and it was held that lands acquired by the testator after his will in 1837, did not pass, although he died after the passage of the act, which is copied from the English Statute of Wills.

In New Jersey, by an Act of 1784, devises of lands pass a fee, if not intended to convey only an estate for life, although the word heirs is omitted, and by an Act of 1824, devises or legacies to children or descendants do not lapse if they leave surviving the testator, children or descendants; and by the Act of 12th March 1851, " Real estate acquired by a testator after making his will shall pass by any general or special devise."

The English Wills Act of 7 Will. 4 & 1 Vict. c. 26, of the 3d July 1837, grew out of the recommendations and propositions contained in the fourth report, made by the commissioners appointed to inquire into the law of England respecting real property, and ordered by the House of Commons to be printed, 25th April 1833. The 3d and 24th sections enact: " That every will shall be construed, with reference to the real estate and personal

estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." By the 25th section a residuary devise shall include estates comprised in lapsed and void devises. By the 28th section a devise without any words of limitation passes a fee, and by the 33d section gifts to children or other issue who leave issue living at the testator's death shall not lapse."

The remarks of Mr. Jarman upon this statute are applicable to all the American acts above stated. " It will be remembered," says he, " that the enactment which makes the will speak from the death relates to the *subject-matter* of disposition only, and that it does not in any manner interfere with construction in regard to the *objects* of gifts ; as to whom therefore the doctrines discussed in the present chapter respecting the period at which the will speaks, or at which the objects are to be ascertained remain in full force even under a will, the period of whose execution or republication brings it within the new law :" 1 Jarman on Wills, 3d edit. p. 313.

Then, as to republications of wills, the same learned writer says, Id. p. 187 : " If the residuary devise itself has lapsed, of course the republication of the will is inoperative to impart new efficacy to the devise as where the lapse affects an aliquot share only of the residue, or where it embraces the entirety. Thus if a testator devise the residue of his lands to A., B. & C., as tenants in common in fee, and A. dies, and then the testator makes a codicil to his will, by the effect of which the will is republished, he would nevertheless die intestate as to one-third, since the subsisting devise, which originally embraced two-thirds only, would never by the mere effect of the republication be expanded into a gift of the entirety."

" It is to be remembered, however, that with respect to the *objects* of gift, the recent statute leaves the pre-existing laws untouched."

The positions taken by Mr. Jarman in relation to the effect of the statute as to the objects of gifts, are supported by all the authorities. In Lightfoot *v.* Burstall, 33 L. J. Ch. 188, V. C. Wood, assuming the doctrine of Humble *v.* Shore, 7 Hare 247, by V. C. Wigram, whose opinion is given at length in the note, says, " that in the events which happened there was an intestacy as to one-third of the residuary real and personal estate, and that so much as consisted of personalty would go to the next of kin, and so much as consisted of real estate to the heirs at law, such heirs to take the same as personal estate."

In re Chaplin's Trusts, Id. 183, a testator by will gave the residue of his property to all and every the children of R. B. and B. B. who should be living at his decease, and to ten other persons

[Williams *v.* Neff.]

by name, and one of the latter died in the testator's lifetime: held, by V. C. Wood, that the ten persons named were not members of a class, and that the share of the deceased legatee lapsed.

The same doctrine is affirmed by V. C. Kindersley, in Hoare *v.* Osborne, Id. 586, where a gift of residue by will to "the persons hereinafter appointed my executors in equal shares" was held to be a gift to those persons as individuals, and the language of the same learned judge in Hand *v.* North, Id. 556, is worthy of notice where there is a tenancy in common of the grandchildren. V. C. Wood, in Peacock *v.* Peacock, 34 L. J. Ch. 315, affirms the same rule where one of the five residuary devisees, a tenant in common, dies in the lifetime of the testator.

In Bullock *v.* Bennell, 24 L. J. Ch. 512, decided on the 12th June 1855, the lords justices, overruling V. C. Wood, at p. 397, held that the 24th section of the Wills Act, 1 Vict. ch. 26, which enacts that a will is to be construed to speak as if executed immediately before the death of the testator, does not apply to the objects of a testator's bounty who are to take the real and personal estate comprised in the will.

There can, therefore, be no doubt that Mary Jane Williams is entitled to one-sixteenth part of the real and personal estate of her grandfather, that being the amount as one of his heirs and next of kin, which she takes in consequence of the lapse of the residuary devise to her uncle, James P. W. Neff, of one-fourth part, he having died before his father.

This does not in any manner affect or impair the decision in Patterson *v.* Swallow, 8 Wright 487, which is sound law (see Wigram on Wills, 4th ed. 99): Taylor *v.* Richardson, 23 Eng. L. & E. 178; Miller *v.* Travers, 8 Bing. 244, per Tindal, C. J., 21 E. C. L. R.

In the first case, therefore, the judgment is affirmed, and in the second, the decree of the Orphans' Court is affirmed at the costs of the appellants.

The Chief Justice dissented.