## Mason's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Otto Wolff, Jr.,* for exceptant.

*Carlyle H. Ross,* of *Evans, Bayard & Frick,* contra.

BOLGER, J., December 24, 1943.—Testator died February 11, 1916, leaving a will, part of the residuary clause of which was revoked by a codicil. His unremar-

ried widow died in 1928. The question is whether the revoked portion of residue is distributable under the intestate laws or in augmentation of the other residuary gift of principal.

The revoked portion of the residuary clause is the italicized part of the following phrase:

"IN TRUST upon the decease or remarriage of my said wife to pay over the entire net income to my said son and *upon his attainment of the age of twenty five years to pay over to him one half of the principal absolutely.*"

The codicil provides as follows:

"I hereby revoke the item giving my son John one half of income from my estate when he reaches the age of twenty one and half his share of principal to be given to him upon his reaching the age of twenty five.

"I give and bequeath the entire income from my estate to my wife Elizabeth H. Mason as long as she remains my widow."

The auditing judge refused the son's request to declare an intestacy, holding that the gift of principal was single and that upon the elimination of the revoked provisions of the will there still remains therein a complete distribution of the estate.

It is agreed that Pennsylvania until 1917, however reluctantly, followed the English authorities in applying the doctrine that when a gift of residue or a portion thereof failed for any reason the will was inoperative to the extent to which it failed: Skrymsher v. Northcote, 1 Swanston 566; Craighead et ux. v. Given, admr., 10 S. & R. 351; Williams v. Neff, 52 Pa. 326; Gray's Estate, 147 Pa. 67; Waln's Estate, 156 Pa. 194; Garnier v. Garnier, 265 Pa. 175; Carson's Estate, 130 Pa. Superior Ct. 133. This principle was abolished by the Wills Act of June 7, 1917, P. L. 403, sec. 15 (c), wherein it is provided that lapsed, void, and revoked shares of residue shall pass to the other residuary legatees. However, this case is unaffected by this legislation.

There are certain exceptions to the pertinent rule. In 2 Jarman on Wills (7th ed.) 1019 it is stated:

"But although the mere revocation in a codicil of a share of residue does not give the share to the other residuary legatees, slight indications are sufficient to show that this is the intention."

3 Page on Wills, sec. 996, comments: "If a provision in a residuary clause can be construed as giving a residue of a residue, gifts out of that part of the residue will, if they fail, increase the shares of such residuary legatee."

In Carson's Estate, supra, the court indicates that (p. 142) : ". . . we should not go one step beyond what the Gray case requires." (Referring to Gray's Estate, supra.) Justice Mitchell in Gray's Estate, supra, and Waln's Estate, supra, criticized the rule severely because, he maintained, it circumvented testator's intention.

We are satisfied that the present case constitutes an exception to the early rule and that the learned auditing judge was correct in refusing to declare an intestacy. Testator's intent is ascertained by examining the will from its four corners: Williamson's Estate, 302 Pa. 462.

This will was well conceived. Its purpose fundamentally is to benefit testator's widow and his son under trusts set up for their lives. The dominant theme of the trusts is survivorship as to income and also as to principal in remainder, with the single exception of the gift in question. The codicil eliminates this exception. The family home is to be occupied by the widow and son or the survivor of them. In the residuary clause there are seven separate paragraphs where an intelligent and effectual attempt is made to provide for the several contingencies that might arise in the operation of the trust—the ones with respect to the widow being her remarriage or death and, as to the son, his

death with or without leaving widow or children—with gifts over in remainder upon termination or failure of condition. Thus testator evidences his intention to dispose of his entire estate and not to die intestate as to any part of it: Fuller's Estate, 225 Pa. 626; Bricker's Estate, 335 Pa. 300.

The gift of principal in question contained in the will was hedged with restrictions—the previous death or remarriage of the widow and the son attaining the age of 25. Later provisions of the same clause are of equal importance. They set up alternative limitations in remainder following three possible events: (*a*) The decease of the son leaving a wife or descendants "subject to the interest of my said wife if she survive", meaning the son's death after the widow; (*b*) the son predeceasing the widow leaving no widow or descendants; and (*c*) the son dying after the widow leaving no widow or descendants. Testator thus provides for the possible failure of the son's inheritance by reason of his death in the lifetime of testator or during the life or widowhood of the widow. The survivorship feature is conspicuous, and from it we conclude that testator intended that any gift that failed should augment the other share.

In Watson v. Donaldson, 1 Ir. R. Ch. D. (1915) 63, testator provided, after a life estate to his sister, a gift of residue to such of five named persons as should survive him and his sister. In the codicil he revoked the gift to two of the five legatees. It was held that, although the residuary clause did not create a joint tenancy, it did during the life of the testator's sister create a right by survivorship and so far conferred on the residuary gift this characteristic of joint tenancy, and therefore the revoked shares augmented the remaining ones.

So also when in the codicil the gift of one half of the principal is revoked, it is a fair indication that the testator having provided substitutionary gifts so care-

fully for one purpose intended them to cover all gifts that failed, and therefore did not want the revoked share to go under the intestate laws, especially when it failed by reason of his own express revocation.

In asking the court to declare an intestacy the son might be said to be inferentially seeking to effect the revocation not only of the gift of principal, but also of the substitutionary provisions of the will. This we cannot do because the codicil cannot be construed to disturb or change the dispositions of the will further than is necessary to give effect to the provisions of the codicil: Chauncey's Estate, 335 Pa. 73; Reichard's Appeal, 116 Pa. 232. There is nothing contained in the codicil which remotely affects the alternative limitations. They, therefore, are effective and carry with them the gift in question.

A review of the Pennsylvania cases which apply the cited rule reveals that none of them contains substitutionary provisions similar to those found in the will in the instant case. They constitute revocations of absolute gifts of principal, but neither the wills nor the codicils contain limitations over. In Williams v. Neff, supra, an intestacy was decreed when one of testator's sons died during the latter's lifetime, causing the lapse of his share, where the residue of his estate was devised equally to and among the testator's children, naming them, and any others that "may hereafter be born" as tenants in common. In Waln's Estate, supra, the gift of residue was "to my sisters, Mary, Sallie, Nellie and Annie, and my brother, Edward, in equal shares." The lapse occurred by Edward predeceasing the testator. In Gray's Estate, supra, the residue was given pro rata to seven persons, naming them, and the eighth share to a charity, which was declared void.

The exceptions are dismissed and the adjudication is confirmed absolutely.