# Reed's Estate.    Reed's Appeal.

1. Where a residuary legatee is willing to take his share of an estate in stocks, bonds and other securities held by the testator and remaining in the hands of the executors, he is entitled to do so, and the executors cannot refuse to make a distribution on the ground that they have been unable to convert the securities into cash.

2. Where a testator gave a share of his residuary personal estate to his widow, who took under the will, and another share to a daughter who died before him without issue: *Held*, that the testator died intestate as to the share given to the daughter, and that the widow was entitled to one-third of the share under the intestate laws.

October 16th 1876. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ. Williams, J., absent.

Appeal from the Orphans' Court of *Erie county:* Of October and November Term 1875, No. 85.

This was an appeal by Harriet W. Reed, executrix, and Charles M. Reed and J. C. Harrison, executors of Charles M. Reed, deceased, from a decree of the court below making a partial distribution of the estate of the testator.

General Reed died December 14th 1871. By his will, after certain specific gifts, he gave four-twelfths of his residuary estate, real and personal, to his wife, two-twelfths to each of his two sons, two-twelfths to his daughter Nellie, and the same share, less certain advancements, to his grandchildren Alice R. and Marion L. Rawle, children of a deceased daughter. He provided that his real estate should "not be parted and divided" and gave the same to his executors and executrix in trust, with power to improve and sell in their discretion, the proceeds of all sales to be

[Reed's Estate.]

divided in the above named proportions. His daughter Nellie died before her father and after the date of the will, in her minority and without issue.

. Henry Rawle, the guardian of the grandchildren, filed a petition in April 1873, praying for a division of the personal estate. The executors and executrix in answer thereto averred that the personal estate consisted of hotel furniture, mortgages, notes, articles of agreement, railroad stocks and bonds, &c., and that the same could not be converted into money, and that they had already divided the personal estate as fast as they could convert it into money.

The court below (Vincent, P. J.) was of opinion that the personal estate should be divided, in kind, and appointed an auditor to make a scheme of distribution of the securities and assets held by the estate.

Upon the coming in of the report, the court ordered two-ninths of the personal property belonging to the estate to be transferred to the petitioner, being of opinion that the lapsed residuary gift to the deceased daughter Nellie passed to her two brothers and the children of her deceased sister, in equal parts, and that the widow could take nothing under the intestate act, without refusing to take her residuary share under the will.

The executrix and executors took this appeal; the material assignments of error raised the question discussed in the opinion of the court.

*J. C. & F. F. Marshall*, for the appellants.—The executors have distributed from time to time all money received by them; they have a right to hold the securities till they can be sold: there is no allegation that they have improperly delayed selling. Articles of agreement for the sale of real estate cannot be divided, as the legal estate is still in the executors.

*C. B. Curtis, H. Souther*, and *L. W. Hall*, for the appellee.— Stocks, bonds and all securities may be distributed: Earp's Appeal, 4 Casey 373; Dundas's Estate, 23 P. F. Smith, 480. The appellee does not demand money, but is willing to take his share of the securities and personal assets held by the estate.

Judgment was entered in the Supreme Court, October 30th 1876, PER CURIAM.—The right of these legatees to have their legacies is not denied, but the executors refuse immediate payment on the ground that the personal estate consists largely of bonds, mortgages, stocks and other securities, some of which are not due and others are not immediately convertible without loss. Charles M. Reed died and letters under his will were taken out in 1871, this petition was presented in 1873 and the report of the auditor filed in 1874. Sufficient time had elapsed therefore to give the executors an opportunity of converting the estate under ordinary circumstances. There

[Reed's Estate.]

are no known debts, and the legacies were not bequeathed upon a
condition, or a contingency. The law authorizes distribution to be
made after one year from the granting of the letters. There is no
legal reason therefore, why distribution should not be made. The
guardian in this case agrees and desires to take the legacies of his
wards in the assets of the estate in kind, without waiting for col-
lection and conversion by the executors. If this can be done in a
reasonable manner so as to produce no loss to the estate and to
others interested in it, we can see no good reason against its being
done. The court below appointed an auditor to perform the work
of fairly allotting the securities, and so far as we can discover, he
has accomplished this in a reasonably fair manner. The objection
made by the executors is that a guardian has no right to invest in
such securities, and therefore has no right to demand them in specie.
A guardian having the estate of his ward in possession, clearly can-
not invest in such securities as those generally are, and if this were
a case of investment the objection would be insuperable. But
such is not the case. These securities were the investments of the
testator himself, and many of them are in value far below their
nominal sums, and the evidence tends to show that they have been
in some, indeed in a large number of instances diminishing in value.
The executors have held on to them, hoping to sell them at a better
advantage. The guardian, however, fears still greater depreciation
and prefers to endeavor to convert them, as he thinks he can do, to
the advantage of his wards.

Under these circumstances we cannot say the court below erred
in directing a transfer of the proportional share of each security to
these legatees, so that their guardian may be enabled to realize their
values to the best advantage. The executors are not harmed by
this, but relieved from responsibility. On the guardian must rest
the reponsibility after their receipt. He is liable to render a strict
account to his wards for his management of their estate, and espe-
cially in a case such as this, where he has exercised his discretion
in this manner. He takes upon himself the responsibility of col-
lecting and converting the securities in the most prompt and avail-
able manner, to the best interest of his wards, and investing the
proceeds according to law. Besides, in permitting him thus to take
the assets into his own hands, he is subject to the control of the
Orphans' Court which may make such order for the security of
his wards as in their opinion may be just and reasonable. He may
be required to give further and other security. This is a matter
that may be left in the hands of that court, and as this case must
go back for correction in a part of the decree, the court may make
proper orders to that effect if necessary.

There is one respect in which we think the court erred. It is in
the respective portions of the estate to which the widow and chil-
dren are entitled. The effect of the opinion of the Orphans' Court

[Reed's Estate.]

on this point is to the deprive the widow of her proportion of that part of the residuary estate, which, by reason of a lapse, must be distributed under the intestate law. Whatever the residuary estate may be, great or small, the testator gave to his widow four-twelfths or one-third of this residue. This she became entitled to, by the will of the testator. The death of any one or more of the other residuary legatees did not lessen or deprive her of her proportion of the residue under the will, but simply changed the distribution of the part left without an owner by reason of the death of the legatee of it in the lifetime of the testator. This lapsed legacy (in this case two-twelfths of the residuary estate) became distributable under the intestate law, as part of the estate not disposed of by the will, when it took effect by and at the death of the testator. Of this he died intestate. His testacy was therefore of only a part of his estate. His widow was therefore put to no election between her legacy under the will and this undisposed of estate. It was not the intent of the testator or of the law she should take her legacy in lieu of the estate thus lapsed. He thought of no lapse, and therefore made no provision in lieu of the legacy. The lapse was from the act of God and the law of the land, which do injury to no one. If then the testator by reason of the lapse died intestate of this portion, the intestate law must govern its distribution, and this being so what warrant is there for saying that the widow takes nothing under the intestate law? She is therefore entitled to one-third, under the will, of the entire residuary estate, and as to that part of the residue which by the lapse is left without an owner under the will, she is entitled to one-third of it under the intestate law, and the children living at the testator's death are entitled to the other two-thirds in equal proportions. As this change in the decree of the court below will require the matter to go into the hands of the same or another auditor to carry out the decree of this court, and as the Orphans' Court may think proper to make a further decree for the protection of the minor wards of the guardian, we shall reverse the decree generally, the costs to be paid out of the general estate, and the matter to be further proceeded in according to the principles of this opinion.

And now, October 30th 1876, the decree of the Orphans' Court is reversed and set aside, the costs to be paid out of the general estate of Charles M. Reed, deceased, and payment of the legacies of the wards of Henry Rawle, the guardian, to be apportioned and made under the directions of the Orphans' Court in accordance with the principles stated in the foregoing opinion, and a procedendo is awarded for this purpose.