## Wenner's Estate

*Butz & Rupp*, for accountant and next of kin.

*Ralph H. Schatz* and *James F. Henninger*, for St. John's Lutheran Church.

GEARHART, P. J., March 10, 1932.—John F. Wenner died on December 10, 1928, leaving a will dated August 12, 1927, together with a codicil thereto, dated December 10, 1928.

By his will, in paragraph four, section (h), the testator provided as follows:

"And all the remainder of the said net proceeds of my residuary estate I then give, devise and bequeath unto such of my brothers and sisters as may be living at my death, and unto the issue, then living, of such of them as may be dead, such issue, however, only taking, and, if more than one, among themselves dividing the share or shares which their parent or parents respectively would have taken if then living."

By codicil dated December 10, 1928 (being the date on which the testator died), in paragraph one he provided as follows:

"1.—Under (h) of paragraph 4 of my said will, my sister, Caroline E. Carson, is entitled to share in the distribution of what I therein denominated the 'remainder' of the net proceeds of my residuary estate. It is now my will that she shall not receive her share in said distribution absolutely, and I do therefore now give, devise and bequeath her distributive share in my estate unto the Allentown National Bank in trust, however, to invest the same in good and lawful securities, to collect the interest arising therefrom and to pay the net income thereof, when and as the same shall be received, unto my sister, Caroline E. Carson, for and during all the term of her natural life, but free from her debts, contracts and engagements and without the same being capable of being anticipated or assigned by her and so that her receipt therefor alone will be a sufficient discharge to said Trustee. At her death the expenses of her burial and a proper marker or tombstone at her grave shall be paid, first out of any accumulated and unpaid income, and secondly out of the principal of said trust fund. Any balance of said trust fund which may remain at the death of my

said sister, after the payment of her burial or tombstone or marker, shall be equally divided between my sister, A. H. Ellena Wenner and St. John's Lutheran Church of Allentown, Penna., absolutely."

The occasion of this audit is the distribution of the corpus and income representing the one-sixth interest provided for by the codicil to the will and which was given in trust to The Allentown National Bank, as trustee, for the purpose of carrying out the trust.

Caroline E. Carson, who was entitled to the income during her life, died on October 25, 1931. The account shows a balance of principal for distribution in the amount of $18,254.86 and income in the amount of $1092.35.

As has been stated, a codicil to the will was published on the same day that the testator died. The bequest to St. John's Lutheran Church thus became void. Section six of the Wills Act of June 7, 1917, P. L. 403, provides:

"No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will attested by two credible, and, at the time, disinterested witnesses, at least thirty days before the decease of the testator; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. A disinterested witness, within the meaning of this section, is a witness not interested in such religious or charitable use,—this section not being intended to apply to a witness interested in some other devise or bequest in the same instrument."

The question that now becomes pertinent is: Who is entitled to the one-half of the corpus which represents the amount of the void legacy to St. John's Lutheran Church? It is contended by counsel for the next of kin that, as to the legacy given to St. John's Lutheran Church, John F. Wenner died intestate, and, therefore, it should be distributed to the next of kin of the testator. It has been argued by counsel that this void legacy cannot be distributed to residuary legatees for the reason that, a portion of the residuary estate being "ill given," the fund must be distributed to the next of kin. With this contention we cannot agree. This rule of law (ill-given legacies in the residuary clause) has been modified by the last sentence in section fifteen (c) of the Wills Act of 1917. Section fifteen (c) of the Wills Act is as follows:

"Unless a contrary intention shall appear by the will, such real or personal estate, or interests therein, as shall be comprised or intended to be comprised in any devise or bequest in such will contained, which shall fail or be void by reason of the death of the devisee or legatee in the lifetime of the testator, or by reason of such devise or bequest being contrary to law, or otherwise incapable of taking effect, or which shall be revoked by the testator, shall be included in the residuary devise or bequest, if any, contained in such will. In any case where such devise or bequest, which shall fail or be void, or shall be revoked as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary devisees or legatees, if any there be, in proportion to their respective interests in such residue."

"Note—This is Section 2 of the Act of June 4, 1879, P. L. 88, 4 Purd. 5145, amended so as to make it plain that it applies to personal as well as real estate, by including revoked devises and bequests, and by the addition of the last sentence.

"This, like the other sections of the Act of 1879, was founded on the English Statute of 7 William IV and 1 Vict., chapter 26:" Remick, Penna. Statutory Law of Decedents' Estates, 146-147.

This section was drafted by the Commission to Codify and Modify the Law of Decedents' Estates with the idea in mind of abolishing the common-law rule

in accordance with the views expressed by Mr. Justice Mitchell in Gray's Estate, 147 Pa. 67. In Gray's Estate the testator provided, inter alia, as follows:

"The payment of bequests shall be in the following order: first to relatives, then the charitable; after they are all paid the balance shall go into the residuum which shall be divided pro rata between William G. Park, David E. Park, Richard G. Park, Margaret B. Park, Eleanor G. Park, and the Allegheny General Hospital."

The bequest to the Allegheny General Hospital, amounting to $20,000, was distributed to the next of kin, and this distribution was approved by Mr. Justice Mitchell in an opinion in which he made some pertinent observations with reference to the residuary bequests that are "ill given." His opinion in part follows:

"That a legacy which fails, either by lapse or because void *ab initio* goes into the residue, is conceded; but in England there is a firmly settled exception, which is thus expressed by Sir William Grant in Leake *v.* Robinson, 2 Mer. 363: 'Everything which is ill given by the will does fall into the residue; and it must be a very peculiar case indeed in which there can be at once a residuary clause and a partial intestacy, *unless some part of the residue itself be ill given.*' And 'accordingly, it was held in Skrymsher *v.* Northcote, 1 Swanst. 566, that a lapsed portion of a residuary bequest went to the next of kin, and not to the other residuary legatees, on the ground that the latter were given specific portions of the residuum, and could not take more by the intent of the will, and receiving the bequest in common and not jointly, there could be no increase by survivorship. The rule thus established does not commend itself to sound reasoning, and is a sacrifice of the settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent, shown in the appointment of general residuary legatees, that his next of kin shall not participate in the distribution at all. The rule is in fact a concession to the set policy of English law, nowhere more severely asserted than in chancery, to keep the devolution of property in the regular channels, to the heir and the next of kin, whenever it can be done.

"If the question were new in this state, speaking for myself I should not hesitate to reject the English rule as wrong in principle and subversive of the great canon of construction, the carrying out of the intent of the testator."

The commissioners who drafted section fifteen (c) of the Wills Act had this decision in mind and, therefore, they added the last line of section fifteen (c), which, as we view it, was to dispose of void legacies which are bequeathed in the residuary clause and award a void or lapsed bequest to the other residuary legatees in proportion to their respective interests.

The commissioners appended the following explanation to section fifteen (c):

"According to the present law, residuary gifts which are void or fail by lapse pass to the next of kin or heirs and not to the other residuary legatees or devisees. The Supreme Court in Gray's Estate, 147 Pa. 67, 75, criticized this rule as wrong in principle and subversive of the great canon of construction, viz., the carrying out of the intent of the testator. In Gorgas's Estate, 166 Pa. 269, the rule was followed in a case where it was apparent from the language of the will that the testatrix intended not to give the next of kin any interest in her estate. And in Waln's Estate, 156 Pa. 194, the rule was applied in the case of a revocation of a residuary gift, Mr. Justice Mitchell repeating his criticism made in Gray's Estate. The commissioners, therefore, recommend the abolition of the common law rule in accordance with the views expressed by the Supreme Court."

Counsel has cited Feeney's Estate, 293 Pa. 273, as authority for the proposition that section fifteen (c) is inoperative in this case; that, as the bequest to

the church was contained in the residuary clause, being "ill given," it brings about an intestacy. We, however, see a distinction between the present case and Feeney's Estate. In Feeney's Estate, the testator provided, inter alia, in item five of the instrument, the portion particularly before the Supreme Court for consideration at that time, as follows:

" 'I give, . . . to the Union Trust Co. . . . in trust, the remaining one-seventh . . . for the following uses and purposes, and none other, to wit: to invest and reinvest the same . . . and to pay the income therefrom to my son William Flinn Feeney [hereinafter called 'son' or 'first life tenant'] for and during the term of his natural life [subject to spendthrift provisions]. At the death of my said son . . . the fund shall continue in trust during the lifetime of the children of the said son . . . *living at the time of his death* [italics ours], and the income from said fund shall be paid in equal shares to or for account of said children. . . . Upon the death of any of the children of my son . . . his or her, the said child's proportionate share of the corpus of the said fund shall be paid to the residuary legatees or their heirs.' The residuary legatees are named in a previous item of the will, being the six other children of testator, to each of whom he gave, free of trust, a one-seventh share of his residuary estate."

Mr. Chief Justice Moschzisker, who wrote the opinion of the court, treated item five, disposing of a one-seventh share of the residuary portion of the testator's estate, as a separate and distinct part of the residuary estate, and held in that case that since the entire residuary clause (dealing with a one-seventh part) violated the rule against perpetuities, the whole clause must fall and, therefore, as to the one-seventh interest, disposed of by that residuary clause, an intestacy followed, and that share should therefore go to the next of kin and not the other residuary legatees provided for in other parts of the will. The Chief Justice pointed out in Feeney's Estate (page 288) that "the life interests which support the illegal ultimate limitations fall with the latter, because they were all part of a common testamentary scheme violative of the rule against perpetuities." The Chief Justice states near the end of his opinion (page 289) :

"We conclude from a close study of the will that all of the testamentary provisions in item five, including the creation of the life interest given to the son and the like interests for his children, were intended by testator as essential parts of a general scheme which ties up the vesting of the principal of the estate until a time forbidden by the rule against perpetuities; therefore, even had William not renounced his life interest, all such provisions must have fallen as one, and his renunciation cannot alter that result. This conclusion brings about an intestacy, for the provisions in section fifteen (c) of the Wills Act of 1917, P. L. 403, 408, that testamentary bounties which fail because contrary to law 'shall be included in the residuary devise or bequest, if any,' must be construed to mean when such residuary devise or bequest is not, as here, unlawful in itself."

In Feeney's case the entire residuary clause attempting to dispose of a one-seventh interest was void, and consequently there was no room for operation of section fifteen (c) of the Wills Act, but in the case before us only a portion of the residuary clause is void, namely, the one-half of the trust fund which is bequeathed to St. John's Lutheran Church. A. H. Ellena Wenner, as a residuary legatee, is entitled to her one-half share of the fund following the death of Caroline E. Carson, who was entitled to the income for life, and we are of the opinion that in this case section fifteen (c) of the Wills Act applies, and, therefore, A. H. Ellena Wenner, being the other residuary legatee within the meaning of section fifteen (c) of the Wills Act, is entitled to the void bequest, which gives her the entire fund.

In examining the will and the codicil, we are led to the conclusion that the testator carved from his whole estate this one-sixth part, which it was his intention to dispose of separate and distinct from the remainder of his estate. As to this share, he appointed The Allentown National Bank of Allentown, Pa., trustee to pay over. the income to Caroline E. Carson for life and impressed this trust with the usual spendthrift trust provisions, and after the death of Caroline E. Carson he directed that one-half of the fund be paid to his sister, A. H. Ellena Wenner, and the other half (the void bequest) to St. John's Lutheran Church. As regards this one-sixth residuary share, the objects of the testator's bounty were his sister, Caroline E. Carson, for life and then over to another sister, A. H. Ellena Wenner, and the church. Viewing it in this light, we are of the opinion that the disposition of the one-sixth share should be construed as a separate residuary clause and that A. H. Ellena Wenner, being the other residuary legatee within the meaning of section fifteen (c), is entitled to the fund represented by the void legacy bequeathed to St. John's Lutheran Church.

In treating this one-sixth share under the will of John F. Wenner as a separate residuary clause, we are doing what Mr. Chief Justice Moschzisker did in Feeney's Estate, supra. In Feeney's case there were seven shares given and the court considered only one of the seven shares void and order it to be distributed to the next of kin, permitting the other six shares to be distributed as directed in other portions of the residuary clause of the will.

In Feeney's Estate, section fifteen (c) was not applicable for the reason already stated, but in the case before us the entire residuary clause was not void and A. H. Ellena Wenner takes as the other residuary legatee.

At the audit it was argued that there was also another reason why section fifteen (c) was not applicable in this case, for the reason that the final sentence in section (c) of the above section contemplates a case where devisees or legatees are given aliquot shares and not where they are respectively life tenant and remainderman. This argument would have weight if we were disposing of this void bequest to the other five parties given residuary shares in another part of the will, but in this case, as to St. John's Lutheran Church and A. H. Ellena Wenner, the shares are aliquot; each by the terms of the codicil taking one-half of the remainder following the life interest to Caroline E. Carson.

In Adams's Estate, 11 D. & C. 644, Judge Gest, referring to section fifteen (c) of the Wills Act, wrote as follows:

"Its purpose was to abolish that common-law rule as to lapse, which was criticised by the Supreme Court in Gray's Estate, 147 Pa. 67, and thus prevent a lapse where it was apparent that the testatrix intended not to give the next of kin any interest in her estate. The statute should receive a liberal construction whenever the evil appears which it was obviously intended to prevent. The letter killeth, but the spirit giveth life."

In Mitchell's Estate, 79 Pa. Superior Ct. 208, the court approved what was stated in Jackson's Estate, 28 Dist. R. 943. The court, referring to section fifteen (c) of the Wills Act, stated: "The object of this clause is to prevent an intestacy where any of the residuary legatees survive and can take." See, also, Harvey's Estate, 4 D. & C. 304.

It appears from the account that there is in the hands of the accountant income to the amount of $1092.35. The testator in the codicil to his will directed the trustee "to pay the net income thereof, when and as the same shall be received, unto my sister, Caroline E. Carson, for and during all the term of her natural life."

He then attached the spendthrift clause, with directions that expenses and burial should be paid out of any accumulated income. It appears that the

funeral expenses and tombstone were paid by the trustee out of income, and we are of the opinion that the personal representatives of the estate of Caroline E. Carson are entitled to income earned to her death. Income received since her death will become part of the corpus and be distributed in accordance with the foregoing opinion. Section twenty-two of the Fiduciaries Act of June 7, 1917, P. L. 447, provides:

"All annuities, and all payments of rents, income, interest, or dividends of any real or personal property, directed by any will to be made during the lifetime of the beneficiary, or for the life or lives of another person or persons, or for a term of years, shall, like interest on money lent, be considered as accruing from day to day, and shall be apportioned to the date of the death of such beneficiary or for such cestui que vie, or to the end of such term of years."

At the audit, a written assignment executed by A. H. Ellena Wenner was presented. The terms of the said assignment provide that any interest A. H. Ellena Wenner has or might receive in the void legacy is assigned to St. John's Lutheran Church.

Distribution will accordingly be decreed as follows:

### Principal

| | |
|---|---|
| Amount presently distributable........................ | $1,092.35 |
| Distribution: | |
| To Asa H. Neimeyer, adjudication costs................ | 3.00 |
| | $18,251.86 |

| | | |
|---|---|---|
| To A. H. Ellena Wenner, as per codicil to will, one-half of the fund......................$9,125.93 | | |
| To A. H. Ellena Wenner, one-half of the fund, now to the use of St. John's Lutheran Church, as per assignment........................ 9,125.93 | | |
| | | $18,251.86 |

### Income

| | | |
|---|---|---|
| Amount presently distributable........................ | | $1,092.35 |
| To the personal representative of Caroline E. Carson, deceased, income to date of death...... | $923.80 | |
| To A. H. Ellena Wenner, one-half of income earned since the death of Caroline E. Carson. | 84.28 | |
| To A. H. Ellena Wenner, now to the use of St. John's Lutheran Church, one-half of income earned since the death of Caroline E. Carson, as per assignment........................ | 84.27 | |
| | | $1,092.35 |

Any additional income acquired by the trustee since the filing of his account will be distributed in accordance with the method of distribution of income set forth above.

And now, March 10, 1932, this report is confirmed nisi, and in the absence of exceptions filed within ten days herefrom, such confirmation shall become absolute, as of course.

From Edwin L. Kohler, Allentown, Pa.