THE TOWN OF NEW HAVEN *vs.* THE TOWN OF HUNT-

INGTON.

The settlement of a free woman in this state, is not superseded, by her marriage with a slave owned by a master residing in another state, and the subsequent emancipation of such slave, unless it is shown, as a matter of fact, that such previous settlement is thereby changed, under the laws of the latter state.

The settlement of such free woman is communicated, both to her legitimate and her illegitimate children, who are born within this state, subsequent to her marriage.

THIS was an action of assumpsit, to recover for the support of Sybil Johnson, the wife of Richard W. Johnson, and their two minor children, Henry and Charles, and for the support of Charlotte Treadwell, an illegitimate daughter of Sybil Johnson, and her three illegitimate minor children.

The cause was tried before the superior court, in New Haven, at the October term, 1851. Upon the trial, it was admitted, that Hannah Johnson, the mother of Richard W. Johnson, and a colored woman, had her original settlement in the town of Huntington. In the year 1804 or 1805, when about seven years of age, she went to live with a man in Cazenovia, in the state of New York, to whom she was bound. In 1806 or 1807, she was married to Titus Johnson,

a slave of one Child, then residing in Cazenovia. In 1816 or 1817, she returned to Connecticut, where she has ever since resided. About a year after her return, Titus came to Connecticut, and lived with her about a year, in the towns of Derby and Bethany, and they had a legitimate son, Richard W. Johnson, the husband of Sybil, and the father of Henry and Charles Johnson, born in Bethany, in the year 1819 or 1820. He then returned to Cazenovia, where he died in 1826.

About the year 1822, Hannah was married to Charles Treadwell, and had an illegitimate daughter, Charlotte Treadwell, born in the town of Orange, about the year 1823; and this daughter and her three illegitimate minor children, are the remaining paupers, named in the declaration.

The defendants claimed, that Child, the master of Titus, had a legal settlement in Cazenovia; that in the year 1821, Titus was manumitted; and that his settlement in Cazenovia, was then communicated to his wife, although she was then residing in Connecticut. But they did not claim this, as the effect of any statute law of the state of New York, but merely of the common law.

Much evidence was introduced to prove a settlement of Child in Cazenovia; but the court found it insufficient for that purpose; and further decided, that if Child were there settled, and Titus was legally emancipated, such emancipation had no effect upon the settlement of Hannah, and her descendants born in this state, while she was here domiciled; and therefore found the issue in favor of the plaintiffs.

The defendants filed a motion for a new trial, and the questions, thereon arising, were reserved for the advice of this court.

*Dutton* and *L. E. Munson*, in support of the motion, contended, 1. That the residence of Titus, with the consent of his master, in Connecticut, operated as a manumission, and he was thereafter settled in Cazenovia, in his own right. 9

New Haven *v.* Huntington.

U. S. Dig., 404. *Colchester* v. *Lyme*, 13 Conn., 274. *Jackson* v. *Bulloch*, 12 Conn., 38. 3 U. S. Dig., 474, 475.

2. That as soon as Titus had acquired a settlement in Cazenovia in his own right, he communicated that settlement to his wife. *Middletown* v. *Lyme*, 5 Conn., 95. *Bethlem* v. *Roxbury*, 20 Conn., 298. 2 Swift's Dig., 823. *Windham* v. *Norwich*, 1 Root, 408.

3. That, Hannah having lost her settlement in Huntington, Richard took the settlement of his father, and the illegitimate children of Hannah took her settlement, or were settled in the place where born.

4. Hannah, by returning to this state, did not thereby regain her former settlement, although the town of Huntington was liable for her support. Rev. Stat., 537.

*Kimberly & Beach* and *C. A. Ingersoll*, contra, contended,
1. That the defendants were liable, by reason of the settlement which Hannah Johnson acquired in Huntington by her birth.

2. The facts that Child was settled in Cazenovia, and that Titus was manumitted by his master, lie at the foundation of the defendants' claim, neither of which are sustained by the evidence.

3. If it is conceded, that Child was a settled inhabitant of Cazenovia, and that in 1821 Titus was manumitted, still the settlement of the paupers in question would not be thereby affected. In the first place, Richard, the husband of one and father of three of the paupers, was born after the manumission, and being a legitimate child, any subsequent settlement of his mother, derivatively acquired, would not affect him. *Oxford* v. *Bethany*, 19 Conn., 229. Secondly, the wife having a settlement in Connecticut, residing and remaining in Connecticut, her settlement is not affected by her husband, residing and remaining in another state, and ac-

quiring a settlement in such state. *Hebron* v. *Colchester*, 5 Day, 169. *Hebron* v. *Marlborough*, 2 Conn., 18. *Lebanon* v. *Hebron*, 6 Conn.; 45. *Otsego* v. *Smithfield*, 6 Cowen, 760. *Chelsea* v. *Malden*, 4 Mass., 131. *Canton* v. *Bentley*, 11 Mass., 441. *Hanover* v. *Weare*, 2 New Hamp., 131. *Land-aff* v. *Atkinson*, 8 New Hamp., 532. *Regina* v. *St. Mary-lebone*, 2 Eng. Law and Eq. R., 252. 3 Burns' Just., 464, 465. *Bethlem* v. *Roxbury*, 20 Conn., 300. *Middletown* v. *Lyme*, 5 Conn., 95.

WAITE, J. It was admitted, on the trial of this cause, that the original settlement of Hannah Johnson was in the town of Huntington. That settlement must remain, until it is lost, by the acquisition of a new one, and was communicated to her son Richard W. Johnson, at his birth, unless he derived a different one, from his father. *Hebron* v. *Colchester*, 5 Day's R., 175.

At the time of her marriage, her husband, Titus Johnson, was a slave, belonging to a man living in Cazenovia, in the state of New York. Unless her settlement was changed, in consequence of that marriage, it remained as it originally was, in the town of Huntington. What effect the marriage of a free woman with a slave will have upon her previous settlement, under the laws of the state of New York, does not appear; and in this case, those laws must govern. If they are the same as ours, the settlement will remain unchanged, because a slave is incapable of imparting a settlement, either to his wife or his children. *Windsor* v. *Hartford*, 2 Conn. R., 355.

Indeed, it is not insisted on the part of the defendants, that her marriage, so long as her husband remained a slave, had any effect upon her settlement; but they claim, that when he became emancipated, his wife acquired his settlement, and his son also.

It appears from the motion, that at the time of his eman-

cipation, his wife was residing in this state, where she has ever since resided, and that his son, Richard W. Johnson, was born in this state. Now if it were shown, that by the laws of the state of New York, his marriage and subsequent emancipation would give his wife and child a settlement in that state, under the circumstances stated in the motion, then the claim of the defendants would be well founded. But the difficulty is, we are not informed what these laws are, so far as they are applicable to the case under consideration; and we must look to them, in determining whether a settlement has been acquired in that state.

Thus, in the case of Middletown against Lyme, it was proved, that the father of the pauper removed to the state of New Hampshire, where he resided more than a year, without being warned to depart, and that, by the laws of that state, such residence conferred upon him a settlement there; and the court held, that his original settlement in this state was lost, by the new one acquired in New Hampshire. 5 Conn. R., 95.

The case under consideration seems to fall directly within the rule repeatedly recognized by this court.

Thus, where a woman, having a settlement in the state of Massachusetts, had an illegitimate child born in this state, and although by our law the child would take the settlement of its mother, if she had one in this state, yet as it did not appear, that, by the laws of the state of Massachusetts, the mother's settlement there would be conferred upon an illegitimate child, born in another state, the court, in the absence of such evidence, held that the child was settled in the town where it was born. *Marlborough* v. *Hebron*, 2 Conn. R., 18.

So in the case of *Sterling* v. *Plainfield*, an action was brought to recover for the support of one Sylvester Stacey, his wife and children. His father was born in the state of Massachusetts, where he had a settlement. He af-

terward came to this state, married here, and his son was born here, but he never acquired a settlement, in this state. The question was, whether the son took the settlement of his father, in Massachusetts, or a settlement by birth, in Connecticut. 4 Conn. R., 114.

Hosmer, C. J., in delivering the opinion of the court, remarked: "Does the law of Massachusetts recognize a child born in another state, as being settled with his father in that state? This presents the only difficulty in the case. On this point the record is silent; and we can not judicially know what the law of a foreign state is, but it must be proved as any other fact. We are not to assume, that Sylvester Stacey would be deemed a settled inhabitant in the state of Massachusetts; and without that assumption, we can not say that he had not a settlement by birth in Sterling. It would be unjust and against law to deprive a person of his settlement here, before we know, that he is settled elsewhere, and thus to render him a vagrant; and on this sub ject we must not be guided by conjecture." 4 Conn. R., 114.

Similar reasoning is applicable to the case under consideration. As we are not informed that, by the laws of the state of New York, the marriage of Hannah with Titus Johnson, a slave in that state, and his subsequent emancipation, have any effect upon her previous settlement, while residing in this state, or that his settlement was communicated to his son, subsequently born in this state, we are not authorized to say, that her settlement was ever changed, or that the son ever had any settlement other than the one derived from his mother.

And if the son's settlement, thus derived from his mother, was in the town of Huntington, it was communicated to his wife upon their marriage, and to his children when born.

And the settlement of Sybil Johnson, thus derived, was in like manner communicated to her illegitimate daughter and grandchildren, subsequently born.

Whether the settlement of the master of Titus Johnson was in Cazenovia or not, in our judgment, will not materially vary the question. We do not therefore review the evidence detailed in the motion, nor determine the question made by the counsel, whether the judge drew the correct conclusion from the evidence.

A new trial is therefore not advised.

In this opinion the other judges concurred, except ELLSWORTH, J., who tried the cause in the court below, and was therefore disqualified.

New trial not to be granted.