JOSEPH H. TOWNE & another, executors, *vs.* EDWARD S. WESTON & others.

Essex. Jan. 19. — April 12, 1882. ENDICOTT, LORD & C. ALLEN, JJ., absent.

A testator gave the residue of his estate to trustees to be invested for the benefit of his four nephews, naming them. As each nephew died, his proportion of the principal from which he derived his income was to go to his issue, and, in default of issue, to whomsoever he might devise the same; and in default of issue and a testamentary disposal of his portion, to the testator's heirs at law. Subsequently to the will, a decision of this court as to the construction of the will of the father of the testator had operated to give to the father of L., one of the nephews and an only son, a large estate, as administrator of his wife's estate. The testator, stating that he did so in consequence of that decision, soon after executed the following codicil: "I revoke so much of my will as relates to my nephew L., and make no provision for him." *Held*, that the effect of the codicil was to exclude L. from participation in the residue; and that the trustees took the residue in trust for the other nephews.

BILL OF INTERPLEADER by the executors of the will of Nathaniel Weston. The case as it appeared by the bill and

answers, on which it was heard by *Endicott*, J., was as follows:

Nathaniel Weston died on February 15, 1881, leaving a will dated May 8, 1877, and a codicil dated September 5, 1878, both of which were duly admitted to probate.

The will, after giving certain legacies, devised and bequeathed the rest and residue of the testator's estate to trustees in trust to invest $6500, and pay over the income to persons named, and proceeded as follows: " The residue to be invested and the income to be paid to my nephews Edward S. Weston, Henry E. Weston, William H. Weston and Lawrence W. Jenkins, during their lives. As each nephew dies, the share in the principal from which he derived his income shall be paid over to his issue if any, and, in default of issue, to whomsoever he may by will devise and bequeath the same or order it to be paid. And in default of issue and a testamentary disposal of the same, to my heirs at law. If issue take, they take in the same manner as if the deceased had died intestate possessed of the same."

The codicil was as follows: " In consequence of the decision of the court in relation to my father's will, I revoke so much of my will as relates to my nephew Lawrence W. Jenkins, and make no provision for him."

The nephews named in the will are, and were at the testator's death, the only heirs at law of said testator; and the residue left by the will for the benefit of the testator's nephews is large in amount, and consists almost entirely of personal estate.

Lawrence W. Jenkins is the only son of Charles T. Jenkins and Lucy D. Jenkins, the sister of the testator. Nathaniel Weston, the father of the testator, died, leaving a will, which became the subject of litigation between his son Nathaniel, Edward S. Weston, Henry E. Weston, William H. Weston, Lawrence W. Jenkins, and Charles T. Jenkins as administrator of his wife's estate. The case was heard before the Supreme Judicial Court of this Commonwealth, and was decided on August 31, 1878. The result of the decision was that about $40,000 remained in the hands of trustees for the benefit of Edward S., Henry E. and William H. Weston, and the residue

of the estate was divided between Nathaniel Weston, the son, and Charles T. Jenkins, the share of each being about $200,000.

On these facts, *Endicott*, J. ordered a decree to be entered that the executors pay over to the trustees named in the will the residue of the estate, to be held in trust for the benefit of Edward S. Weston, Henry E. Weston and William H. Weston. The guardian *ad litem* of Lawrence W. Jenkins appealed from this decree; and the judge reported the case for the determination of the full court, such decree to be entered as law and justice might require.

*W. Perry*, for the guardian *ad litem* of Lawrence W. Jenkins.

*J. A. Gillis & A. P. White*, contra.

DEVENS, J. It is quite apparent that the testator did not intend to remain intestate as to any part of his property, but to dispose of the whole. After some legacies, he devises and bequeaths the rest and residue of his estate to trustees, to be invested for the benefit of his four nephews. As each dies, his proportion of the principal from which he derived his income is to go to his issue, and, in default of issue, to whomsoever he may by will devise the same. It is only in the remote contingency of the death of one of these nephews without issue, and without having made a testamentary disposal of his portion, that the heirs at law are to take anything.

Subsequently to this will, a decision of this court as to the construction of the will of the father of the testator had operated to give to Charles T. Jenkins, the father of Lawrence W. Jenkins, an estate, (which presumably would descend to Lawrence, who was an only son,) very large when compared with the provision made under that will for the other nephews of the present testator. *Weston* v. *Weston*, 125 Mass. 268. Expressly referring to that decision, and stating that he does so in consequence of it, the testator by a codicil properly executed says, " I revoke so much of my will as relates to my nephew Lawrence W. Jenkins, and make no provision for him."

If this is to be construed as the revocation of a bequest, the general principle that, where a bequest is revoked, the property bequeathed, no other disposition having been made of it, is to be treated as intestate, applies. If the codicil operates to

leave the thing bequeathed as it before existed, and to strike out only the name of one from those who are to enjoy it, the number among whom it is divided is diminished, but the bequest remains, and there is nothing to pass into the intestate estate.

The intention of the testator is to govern, but this must be collected from the will and codicil, and the surrounding facts and circumstances. Even if it may be supposed that, by taking a bequest from one, he thought it would go to the others, that would not be sufficient, unless he expressed sufficiently his intention that such should be the result. The bequest must still be held to have lapsed, as if the person to whom it was bequeathed had deceased.

It is no doubt the general rule of construction, that, when a bequest is made to individuals by name, although they in fact constitute a class, the intention to give to them individually is indicated, and thus the share of one dying before the testator will become intestate property. But this rule, founded on the supposed wish of the testator, may be controlled by those portions of a will, if such exist, which indicate an intent that such shall not be the result. If it appears from the whole will that the testator intended his beneficiaries should take as a class, the share of one who dies before the testator will go to the survivors. *Jackson* v. *Roberts*, 14 Gray, 546. *Schaffer* v. *Kettell*, 14 Allen, 528. The fact that the legatees are a class is important, and the circumstance that they are mentioned by name is far from conclusive that they are not to take as such.

By his will the testator gives to trustees for the benefit of the four persons named, who are all his nephews, and sons of a brother and a sister, the whole residue of his estate, which is to be invested and the income paid to them for their lives. No words are used showing that it is to be divided into distinct shares, or that a distinct share is given to each. He contemplates that at some future time it will be divided at the decease of either, but he makes but a single bequest, although there are four beneficiaries. When the codicil is made, the reference to the decision of this court shows that the testator intended by this new disposition of his property to render his nephews more

equal in fortune than they would be if Lawrence remained one of the beneficiaries. His object being thus indicated, we should give such interpretation as will effect it, unless some settled rule of construction forbids. Revoking the bequest so far as Lawrence was interested therein, and allowing that which was bequeathed to pass into the condition of undisposed of property, would obviously have been a very imperfect method of attaining his object. He must have been aware, if he considered the subject at all, that Lawrence would then receive part of it under the gift to the heirs at law. He therefore revokes so much of the will as relates to Lawrence, but in so doing he has no intent, and shows none, to recall anything he has before bequeathed, but simply to strike out the name of Lawrence from those who are to enjoy it. The words "and make no provision for him" are quite as consistent with the intent to exclude him from this number as with any intent to revoke the bequest itself.

Where the residue of an estate was left to certain persons, among whom H. was included by a separate clause, and this clause was afterwards by a codicil directed to be stricken out by the words, "I revoke all that part written in my former will which leaves a legacy to H., written in my will on the thirty-second and thirty-third lines," the will being so constructed that, read with a total omission of the revoked words, it disposed of the whole property, no inconsistent words being found in it, it was held that the whole residue went to the other legatees named, for reasons which are entirely applicable to this case. *Harris* v. *Davis*, 1 Collyer, 416. Such is the result here. The words that refer to Lawrence W. Jenkins being omitted, there is a clear disposition of the whole property to the others named. There is no other alteration or departure from its language to affect this, nor is any inconsistent language found when the change is made.

It is argued that *Harris* v. *Davis*, *ubi supra*, is distinguishable, for the reason that there the striking out the name of the devisee did not disturb the rest of the will, while here the rest of the will must be modified to suit the construction given, and the words "except Lawrence," or synonymous words, must be considered as inserted after "heirs at law" in the clause "in

default of issue and a testamentary disposal of the same." It is not necessary now to determine what, in view of the codicil, shall be the construction of this clause upon the occurrence of the remote contingency that enables the heirs at law to take under the will. The provision in regard to the trust estate is distinct and separable, and primarily disposes of the whole property. The meaning it is to bear cannot be affected by an inquiry into the effect of the codicil on a later independent clause, or its construction. If such construction be that stated above, then the codicil has operated to strike out Lawrence from all provisions necessarily referring to him, as well as from those where he is mentioned by name. There is no reason why, if such an intention be expressed, he should not be thus excluded. If such is not the true construction, and Lawrence would take as one of the heirs at law, should the contingency arise contemplated by that clause, the codicil is then treated as affecting only that provision relating to the trust estate, and the case is strictly within that of *Harris* v. *Davis, ubi supra,* no other portion of the original will, except that in which he is expressly named, being disturbed.

We are therefore of opinion, that, upon a proper construction of the will and codicil, the whole residue of the estate is to be paid over to the trustees; and that the portion of Lawrence W. Jenkins does not become intestate property.

*Decree affirmed.*