CLARENCE W. BRONSON, TRUSTEE (WILL OF FRANK S. PLATT) *v.* M. EDITH PINNEY ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 13—decided July 13, 1943.

*George E. Beers* and *William L. Beers*, for the appellants (defendants Howard C. Platt, executor, et al.).

*Anson T. McCook*, for the appellants (defendants Morris B. Clark, administrator, et al.).

*Mary E. Manchester*, with whom was *Crenna Sellers*, for the appellees (defendants Sara M. Squire et al.).

*Charles M. Lyman*, for the appellees (defendants Horace B. Squire et al.).

MALTBIE, C. J.   This action was brought to secure a construction of certain provisions in the will of Frank S. Platt, who died, a resident of New Haven, in 1934. The case was submitted to the trial court upon the admitted allegations of the pleadings, and from its decision several of the parties have appealed.

In the fourth article of the will, the testator gave a legacy of $5000 to each of ten nephews and nieces, who are named, and to the children of a deceased niece, Bertha B. Squire, the children also being named.

We are primarily concerned with four of these legacies: one to his niece Mrs. Mabel Pinney Cannon, one to his niece Mabel Clark, one to his nephew Howard Platt, and the fourth to his niece Gladys Platt Pendleton. In the sixth article he gave the residue of his estate to trustees "to pay the net income in semi-annual payments to the legatees named in the fourth item of this will in equal portions (with one exception) and if, after the date of this will and' at any time before the termination of this trust, any one of the aforesaid legatees dies leaving issue then the portion which the parent would have received had he lived shall be paid to the issue of such parent. This trust shall terminate ten (10) years after the probate of my will. Upon the termination of the trust the trust fund shall be divided equally (with one exception) between the legatees named in the fourth item of my will and the issue of such legatees as may die after the date of my will and prior to the final distribution. The issue of any legatee before named in said item four shall take the parent share per stirpes. I make one apparent exception to the rule of equality in income and distribution. In item four (f) I give to the four Squire children collectively the share of their parent. These four children collectively take one portion of income and principal."

In a codicil he revoked the legacy given to Mrs. Cannon, and in lieu of it gave the same sum to the trustees named in the will, as a spendthrift trust for her, with this provision: "I further direct that the payment of principal, if any, due to the said Mrs. Mabel Pinney Cannon under the sixth item of my will shall be added to the principal of the trust estate in this item created and become a part and parcel of it. If at the death of the said Mabel Pinney Cannon any portion of the principal of this trust fund has not

been expended, then and in that event, I give and bequeath the unexpended portion to the issue of the said Mabel Pinney Cannon share and share alike Per Stirpes." He later made a second codicil as follows: "I modify paragraph sixth of my will as follows: Howard Platt, of San Francisco, and Gladys Platt Pendleton, of San Francisco, and their respective issue shall take nothing by virtue of said paragraph. It is my wish that they each receive five thousand ($5000) dollars by virtue of paragraph fourth (j) and (k) and that they receive no more. If either the said Howard Platt or the said Gladys Platt Pendleton die before me then the issue of the one dying shall take the parent's share per stirpes. I have reduced the gifts of the two legatees aforesaid because I believe they are relatively more prosperous than some of my other legatees and therefore, in less need of money."

Mabel Clark survived the testator but has died without issue, and the administrator of her estate is one of the parties to this action. One of the questions presented was as to the disposition to be made of the share of the residue given to her. The other questions are as to the rights of the parties under the sixth article, as regards the shares given in it to Howard Platt and Mrs. Pendleton. Howard Platt survived the testator but has since died, leaving one child. Mrs. Pendleton is still living.

The will contains no express disposition of the gifts made in the sixth article in the event that any legatee should die without issue, as did Mabel Clark. The direction that "upon the termination of the trust" the fund "shall be divided equally (with one exception)" among the legatees is insufficient to import that any legatee must survive a termination of the trust in order to become entitled to a share of it. We have never recognized in this state the rule that where there is no

express gift, but merely a direction to pay or divide at a future time, the gift will not vest until that time. *White* v. *Smith,* 87 Conn. 663, 668, 89 Atl. 272; *New Britain Trust Co.* v. *Stanley,* 128 Conn. 386, 393, 23 Atl. (2d) 142. In *Mead* v. *Close,* 115 Conn. 443, 445, 161 Atl. 799, we said: "The words 'to be divided' among my brothers, or their children, import a gift to these beneficiaries, and in themselves have no significance as postponing the vesting of their rights. . . . This is also true of the provision that such division shall be made 'upon the death' of the life tenant." Any claim that Mabel Clark's rights were contingent upon her being alive at the termination of the trust is completely rebutted by the fact that without question she became entitled at the death of the testator to receive a share of the income of the trust; in both the bequest of the income and of the principal at the termination of the trust, the testator made the same provisions, gifts to the legatees named in the fourth article and to the issue of any who died; and it is not reasonable to assume that he distinguished between the gifts of income and principal, intending that the former should vest at his death and the latter only upon the termination of the trust. If Mabel Clark had survived the termination of the trust, it was clearly the intent of the testator to vest in her absolute title to her share in the fund; and the provisions of the will can mean no less an estate because she died before that time. *Duncan* v. *Higgins,* 129 Conn. 136, 145, 26 Atl. (2d) 849.

She took an interest in both income and principal which vested at the death of the testator. This was defeasible in the event that she died leaving issue; but nowhere in the will do we find any intention expressed that her death without issue would in itself terminate the estate given to her. In *Austin* v. *Bristol,*

40 Conn. 120, 136, we quoted the statement of the Master of the Rolls in *Harrison* v. *Foreman,* 5 Ves. 207, 210, 31 Eng. Rep. R. 549: "There is a vested interest; and the contingency, upon which it is to be devested, never happened. The vested interest therefore remains; as if that contingency had never been annexed to it." This quotation was repeated and the principle applied in *Mahoney* v. *Mahoney,* 98 Conn. 525, 535, 120 Atl. 342. We have also applied it in instances where an absolute estate was defeasible upon a condition which has failed; *Congregational Home Missionary Society* v. *Thames Bank & Trust Co.,* 127 Conn. 1, 13, 14 Atl. (2d) 626; *Duncan* v. *Higgins,* supra; and in the latter case we said (p. 145): ". . . our law is settled that where there is an absolute gift to one person, with a provision that in the event of his death before a certain time another should take by executory devise or bequest, and the latter gift fails the absolute interest in the first donee remains unaffected and upon his death passes to those who succeed him by right of inheritance." In *Thompson* v. *Martin,* 281 Mass. 41, 183 N. E. 51, the testator directed that the income of a trust fund should be divided among his nephews and nieces, naming them, and at termination of the trust that the principal should be divided among these nephews and nieces, but, if one were not then living, the share he would have taken was to be paid to his issue, if any, and if none, it was to become a part of the trust fund; the court, pointing out that no disposition was made of income where a legatee died before the termination of the trust, and holding that the bequest was not one to a class, decided that each legatee took a vested interest in the income at the death of the testator which upon the death of the legatee before the termination of the trust would pass to his personal representative. See

1 Scott, Trusts, p. 719. From these precedents it would follow that upon the death of Mabel Clark without issue her share in the residue, both of income and principal, became a part of her estate.

Certain of the parties claim, however, that there was a right by survivorship attached to each gift in the sixth article, by virtue of which, upon the death of any of the legatees, the others would share the portion given to him or her. It is not claimed before us by any party that the gift in the sixth article was a class gift, and indeed such a claim would be without foundation. *Shannon* v. *Eno,* 120 Conn. 77, 93, 179 Atl. 479; *Union & New Haven Trust Co.* v. *Sellek,* 128 Conn. 566, 569, 24 Atl. (2d) 485. Nor did the provision create a joint tenancy with the incident of survivorship. Such an estate is not favored, and will not be held to exist, unless the will plainly manifests that the testator so intends. *Allen* v. *Almy,* 87 Conn. 517, 525, 89 Atl. 205; *Blodgett* v. *Union & New Haven Trust Co.,* 111 Conn. 165, 167, 149 Atl. 790; *Peyton* v. *Wehrhane,* 125 Conn. 420, 436, 6 Atl. (2d) 313. The direction that at the termination of the trust the fund is to be "divided equally (with one exception)" among the legatees in itself is indicative that a joint tenancy was not intended; *Shannon* v. *Eno,* supra, 93; and this direction takes on increased weight from the fact that in the "exception" it was stated that a certain group of legatees was to be treated "collectively," for this strongly indicates that the others were not to be regarded in any sense as constituting a unit.

Much was said in brief and argument about the general intent of the testator to benefit only those of his own blood, his nephews and nieces and their issue. In view of some of the arguments made to us, it may be well to reiterate the oft-repeated statement that in construing a will the function of the court is to give

effect, not to an intention which it may conclude the testator had, but to the intention which finds expression in the words he has used. *Mitchell* v. *Reeves,* 123 Conn. 549, 556, 196 Atl. 785. Where a general intent appears from the terms of the will, it may be of great weight in determining the meaning to be attached to certain expressions if they are ambiguous, but it cannot supply an intent which is not found in the language of the will. "An intent inferred from the consequences of an express provision of a will, when the language used is free from doubt, will not be permitted to affect the construction of that language; much less will it be permitted to nullify a rule of law applicable to an express bequest." *Bill* v. *Payne,* 62 Conn. 140, 142, 25 Atl. 354. The will is barren of any language implying that the legatees named took a joint interest with right of survivorship. Nor can we unqualifiedly accept the contention that the testator intended that in no event should others than those related to him by blood benefit under his will. It is alleged and admitted that the legatees named in the fourth article were all the testator's heirs-at-law, and this implies that Bertha B. Squire was a niece, although she is not so described in the will; and undoubtedly the testator primarily intended to benefit those who were nearest in blood to him at his death and at the termination of the trust; that is, his nephews and nieces, or if any died, his or her issue. But it does not follow that he intended that in no event should other persons share in his estate. It is quite consonant with his expressed intent that his interest ceased with the persons so related to him, and that, should a nephew or niece die without issue, he was willing that the portion given to him or her should be disposed of as his or her estate. See *Morris* v. *Bolles,* 65 Conn. 45, 51, 31 Atl. 538.

. It is not without significance that in the fifth article of his will the testator established a trust fund the income of which should be paid to a named beneficiary, with a provision that the trust should end at her death, but with no direction as to the disposition of the principal. He must have appreciated the fact that at the termination of the trust the principal would fall into the residue. It is therefore quite likely that he realized that upon the death of one of the legatees without issue, the portion or share of that legatee would not become a part of the fund created in that article to be distributed among the surviving legatees or issue of any who had died. We attach little importance to the provision in the first codicil that "the payment of principal, if any," due to Mrs. Cannon under the sixth article, should be added to the trust created for her in that codicil; the words "if any," may well have been intended to refer to the contingency of Mrs. Cannon's death before the termination of the trust created in the sixth article, in which event she would become entitled to no part of the principal. Neither in the circumstances we have discussed nor in others which have been called to our attention do we find manifested an intent that the usual rules to which we have referred are not applicable here. Under the sixth article, if a legatee died without issue before the termination of the trust, the share given to him did not pass by right of survivorship to the other legatees named or their issue.

We turn to the provisions of the second codicil revoking the gifts in the sixth article to Howard Platt and Gladys Platt Pendleton. For many years it has been treated as axiomatic in this jurisdiction that, if a gift of a portion of the residue of an estate fails, that portion becomes intestate property. *White* v. *Fisk*,

22 Conn. 30, 55; *Morris* v. *Bolles,* supra, 56; *Daboll* v. *Daboll,* 101 Conn. 142, 147, 125 Atl. 253; *Wilson* v. *D'Atro,* 109 Conn. 563, 569, 145 Atl. 161; *Shannon* v. *Eno,* supra, 96. This rule, derived originally from English authorities, is generally followed in this country. Notes, 28 A. L. R. 1237, 139 A. L. R. 868; 69 C. J. 1080. Later English decisions have, however, considerably narrowed it; 2 Jarman, Wills (7th Ed.), p. 1018; its validity is denied in some jurisdictions; *Corbett* v. *Skaggs,* 111 Kan. 380, 383, 207 Pac. 819; *Will of Waterbury,* 163 Wis. 510, 514, 158 N. W. 340; it has been criticized by courts of the highest repute; *Wright* v. *Wright,* 225 N. Y. 329, 340, 122 N. E. 213; *Gray's Estate,* 147 Pa. 67, 74, 23 Atl. 205; *In re Estate of Zimmermann,* 122 Neb. 812, 814, 241 N. W. 553; and is modified in some states by statute. Note, 139 A. L. R. 871; 69 C. J. 1081. But, as the courts of New York and Pennsylvania concluded in the decisions referred to, the rule has been too long and too thoroughly settled now to be abrogated. The reason given in support of it in these cases is that the testator, having directed that the residue of his estate be divided among certain persons, is presumed not to have intended that the share given to one should be augmented by reason of the failure of a share given to another. See 3 Page, Wills, p. 99. The authorities criticizing the rule point out that the existence of a general residuary clause shows that the testator did not intend that any of his property should be intestate, and that the rule directly contravenes that intent; that it in effect destroys a clear intent by a mere presumption of intent; and that it is exceedingly difficult to reconcile it with the other generally accepted rule that legacies which lapse or fail fall into the residue—for that in itself augments the interests of those to whom the residue is given.

In a number of jurisdictions the same rule has been regarded as applicable where a gift of a portion of the residue is revoked; *Towne* v. *Weston*, 132 Mass. 513, 515; *Waln's Estate*, 156 Pa. 194, 197, 27 Atl. 59; *Magnuson* v. *Magnuson*, 197 Ill. 496, 499, 64 N. E. 371; 69 C. J. 1080; and this is stated to be the law of England, although "slight indications" of a different intent are sufficient to make the rule inapplicable. 2 Jarman, op. cit., p. 1019. In *Waln's Estate*, supra, the court says that "the distinction between lapse and revocation, though logically clear, is thin"; and in *Towne* v. *Weston*, supra, the decision recognizes the effect of a residuary clause as indicating an intent that no part of the estate shall be intestate, but states that this is insufficient to effectuate a gift to the others who are to share in the residue in the absence of any words showing that such a gift was intended. In the first place, it seems to us that the distinction between the lapse and the revocation of a gift of a portion of a residue is substantial; the first is due to circumstances not at all within the intent of the testator, while the latter is the result of his own intended act. In the second place, the testator, by the disposition he has made of the residue, has indicated his intent that all of his estate shall be distributed to the legatees and devisees whom he has named; the effect of holding that the portion the gift of which is revoked is to be distributed among the others who are given shares in the residue is to make that intent fully effective; and the expression of a specific intent to accomplish that purpose hardly seems necessary.

We have no controlling precedent as regards the effect of the revocation of a gift of a portion of the residue. We are of the opinion that the intent of the testator will be best effectuated if the revocation be

treated as though the codicil had changed the language of the sixth article by inserting in the direction for the division of the residue among his nephews and nieces named in the fourth article an exception as regards Howard Platt and Gladys Platt Pendleton. Our conclusion is that the portion the gift of which is revoked remains a part of the residue to be divided among the others to whom the trustees are directed to distribute it.

In discussing the issues, we have not distinguished between income and principal because the same principles apply to both. Upon the death of Mabel Clark, the administrator of her estate became entitled to the share of income she would have received, and at the termination of the trust the portion of the principal she would have received should be distributed to him. All the income of the fund should be divided among, and at the termination of the trust the principal should be distributed to, the legatees named in the fourth article, excluding Howard Platt or his issue and Gladys Platt Pendleton, but including the administrator of the estate of Mabel Clark, who should receive the share she would have taken had she lived. This conclusion accords with that reached by the trial court as regards the shares given in the sixth article to Howard Platt and Gladys Platt Pendleton or their issue, but is at variance with its conclusion as regards the share given to Mabel Clark.

The guardian ad litem for certain minor parties made a motion for an additional allowance for services and expenses because of the taking of the appeal. The making of such allowances is the function of the trial court, not of this court. *Horton* v. *Upham,* 72 Conn. 29, 32, 43 Atl. 492. The motion is denied without prejudice to its renewal in the Superior Court on the remand of the case to it.

There is error in part, the judgment is set aside and the case is remanded with direction to enter judgment modified in accordance with this opinion.

In this opinion the other judges concurred.